# METROPOLITAN RAILROAD CO. *v.* BLICK.*

STREET RAILWAYS; OPINION-EVIDENCE; MOVING VEHICLES, SPEED OF; NEGLI-
GENCE; CONTRIBUTORY NEGLIGENCE.

1. Anyone of average intelligence who sees a moving car is competent in
   law to form and express an opinion as to its speed, and the opinion is.
   competent evidence in an action against the street railway company
   owning the car by one injured by it, when one of the questions involved
   is the speed at which the car was moving at the time.
2. Where the rear end of a long and heavy street railway car, which pro-
   jected beyond the rail about four feet as the car rounded a curve in
   the track while going at a rapid rate of speed, struck a wagon contain-
   ing sand, which was being driven alongside the track in the same direc-
   tion the car had been going before it started to round the curve, and
   the wagon, the horses drawing it, and the driver were injured, it was.
   *held* that, although there might have been mistake, miscalculation, or
   inattention on the part of the driver of the wagon, and although the
   car had a superior but not exclusive right of way, the trial court prop-
   erly refused to direct a verdict for the defendant, in an action by the
   driver against the street railway company owning the car, the ques-
   tions of the negligence of the motorman and the contributory negli-
   gence of the driver being for the jury, and not for the court.
3. An instruction asked by the defendant in such a case, that if the wagon
   was·far enough from the track so that a reasonably prudent man
   might have formed the honest belief that the rear of the car would pass.
   it, and the motorman actually believed this, then the defendant was.
   not liable, because there was no negligence on the part of the motor-
   man, is properly refused; especially when an instruction granted on
   behalf of the plaintiff covered the same subject-matter, by telling the
   jury that the motorman was not obliged to use greater care than a
   reasonably prudent man should, in the situation, have used in operat-
   ing around the curve in question a car of the kind that was used..

No. 1290.   Submitted May 8, 1903.   Decided June 3, 1903.

HEARING on an appeal by the defendant from a judgment of

*\*Street Railroads—Collisions.*—See also editorial note to *Hicks* v. *Citi-
zens' R. Co.* 25 L. R. A. 508, presenting the authorities as to liability for
injuries caused by collision of street car with vehicle or horses.

the Supreme Court of the District of Columbia upon a verdict of a jury in an action against a street railway company to recover damages for personal injuries.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia rendered in a suit entered in that court by the appellee, Edward A. Blick, against the appellant, the Metropolitan Railroad Company, to recover for injuries sustained by the appellee, as the result of a collision between a wagon driven by the appellee and one of the cars of the appellant company.

On October 17, 1900, the day of the accident, the appellee was driving a team of horses attached to a wagon filled with sand, on Thirty-fifth street, in this city, in a northerly direction from N to O street, and intended to go northward on Thirty-fifth street beyond O. On Thirty-fifth street, between O street and Prospect avenue, which is south of N street, there is a single line of street-car track of the appellant company, whereon the cars, entering from Prospect avenue, are run northwardly to O street, where they turn to run eastwardly on O street. The grade of the street rises very considerably from N to O street, and at the turn of the railroad track at the intersection of O and Thirty-fifth streets, the rails make a somewhat steep incline. To surmount the grade here it seems to be necessary to apply considerable force to the cars, and it seems, also, that, in order to avoid the incline, wagons and other vehicles prefer to take the west side of the street, where there is a space of between 18 and°20 feet of roadway between the car track and the curbstone on the west side of the street.

The appellee had come from N street into Thirty-fifth and turned northward on his way, driving on the east side of the track, until he reached the middle of the block, when, in order to avoid the incline at the corner, he crossed the track and proceeded up on the west side of it. Just as he reached the intersection of O and Thirty-fifth streets, his wagon was struck by

the rear end of one of the appellant's cars, which had come up behind him on Thirty-fifth street and was at that moment turning into O street, and he was thrown from the wagon and was injured, and the wagon was somewhat damaged. For this injury and damage he instituted the present suit.

At the trial there was testimony on behalf of the appellee to the effect that he was familiar with the locality and with the kind of cars run there by the appellant; that there was nothing to obstruct his view of an approaching car if he had looked backwards; that he had looked before he crossed the track from east to west side and saw no car; that he did not afterwards look back; that at the time of the accident there were no other wagons or vehicles in the neighborhood; that it was the rear end of the car which struck appellee's wagon, and that this rear end, in curving, projects, as does the front end, 3½ or 4 feet beyond the rails. There was also testimony on his behalf to the effect that no bell was rung or signal given by the motorman of the car to notify the appellee; and that the car had "to go at some rate of speed to make the turn, because the turn is a rather short one." One witness testified, over objection by the appellant, that the car was running, according to his judgment, about 13 or 14 miles an hour.

The testimony on behalf of the appellant tended to show that the motorman of the car saw the appellee's wagon when the car was at N street and the appellee was in the act of crossing the track about midway between N and O streets; that, as the motorman approached the appellee's wagon, the wagon was about 3 or 4 feet from the track; that the car was going not more than 3 miles an hour; that he thought that, as the front end of his car had passed the appellee's wagon in safety, the rear end would do so also; that he had twice sounded his gong, and that the appellee had paid attention to the gong because he had looked around.

Upon this testimony the defendant company moved the court to direct a verdict in its favor, which the court refused; and the case was submitted to the jury under instructions, whereupon the jury returned a verdict for the plaintiff in the sum of $2,200, upon which there was judgment. From this judgment,

in pursuance of exceptions duly reserved, the defendant company has appealed to this court.

[The trial court granted the following prayers for instruction on behalf of the plaintiff over the objection of the defendant, and the latter excepted:

"1. If the jury find from a preponderance of the evidence that the car of the defendant which struck the plaintiff's wagon was so constructed that in rounding the curve in the defendant's track at the place described in the declaration its rear end would project over the track and thereby increase the danger from the car to persons lawfully using the roadway adjacent to the track, and that the defendant's servant driving the car knew, or in the exercise of reasonable care would have known, such to be the case, the jury is instructed that, in operating the car in rounding the curve, the defendant's servant should have used a degree of care commensurate with such increase of danger, and that if necessary to avoid the same the said servant would have had to use a greater degree of care than if the car had been so constructed that in rounding the curve its rear end would not have projected over the track as aforesaid, then and in that event, it was the duty of the said servant to have used such greater degree of care: Provided, however, that the said servant was not obliged to use greater care than a reasonably prudent man should in the situation have used in operating around the said curve a car of the sort which the jury shall find from the evidence struck the plaintiff's wagon.

"2. If the jury find from the evidence that on the occasion mentioned in the declaration, the plaintiff, before driving across the defendant's track, had looked to see whether a car of the defendant was approaching, and found that none was, and thereupon decided to cross the track, and in so doing exercised the judgment and care of a reasonably prudent man under the circumstances, and, further, that after having crossed the track the plaintiff was continuing his journey as a reasonably prudent man would have done, and that while he was so crossing the

track and after he had done so, or either, the motorman in charge
of the defendant's car which struck the plaintiff's wagon saw
the plaintiff in the act of so crossing the track or continuing his
journey in time to have seasonably warned the plaintiff of the
approach of the car, and to have slowed up or stopped the same
in time to have prevented it striking the plaintiff's wagon, or
either, and did not exercise ordinary prudence and warn the
plaintiff or slow up or stop the car, but ran the same upon and
against the plaintiff's wagon and damaged the same and injured
the plaintiff, the plaintiff is entitled to recover in this action.

"3. If the jury find from the evidence that before the de-
fendant's car struck the plaintiff's wagon the defendant's motor-
man saw the wagon and realized the situation in which it was
and yet attempted to pass it in the belief that the car would not
strike it, the jury is instructed that such belief on the part of
the motorman is no defense to this action, unless the jury shall
further find from the evidence that the plaintiff and the motor-
man made a common mistake of judgment in supposing the said
wagon to be in a position of safety in respect of its liability to
be struck by the car; but in determining whether the plaintiff
supposed his wagon to be in such position of safety, the jury
should consider what, if any, evidence there is in the case that
the plaintiff exercised any judgment or formed any opinion in
that regard.

"4. If the jury shall find from the evidence that after the
plaintiff had crossed the defendant's track and was continuing
his journey, the defendant's motorman sounded his gong as a
warning of danger to the plaintiff, the jury is instructed that the
mere fact of the motorman so having sounded his gong is not of
itself sufficient to disentitle the plaintiff to recover in this action,
but, in order to disentitle the plaintiff to recover on that account,
the jury should further find from the evidence that the plaintiff
heard or should have heard the said gong and was, in addition,
guilty of some negligence in not heeding the warning thereby
conveyed; and the jury is further instructed that even though
the motorman in fact sounded his gong as a warning to the
plaintiff if he yet saw that the plaintiff did not heed the same he

was not justified in taking the risk of passing the plaintiff's wagon in safety, *if a person of ordinary prudence would have regarded it as perilous to do so.*

Given as modified, modification being shown in italics.

"5. If the jury find for the plaintiff it should award him such damages as will fairly but fully compensate him for the physical and mental suffering occasioned by such injuries, if any, as the jury may find him to have sustained as a consequence of the accident complained of in the declaration and in the particulars mentioned therein, and for his loss of time from his business and in his capacity therefor, and the expenses which he necessarily and properly incurred in connection therewith, and in having his wagon repaired, and for medical services, as well as for any permanent injury which the jury may find him to have sustained either in any of his faculties or in his capacity to work at his calling."

Thereafter at the defendant's request the court granted the following prayers:

"2. The ground on which the plaintiff claims to recover against the defendant is negligence on the part of its employees in managing the car at the time of the accident to plaintiff, and to entitle him to a verdict the burden is upon him to prove by a clear preponderance of the evidence that the accident was occasioned by the negligence of one or more of the employees of the defendant in the management of the car. There is no presumption or inference of negligence on the part of the defendant, arising from the happening of the accident, but it must be proved by other evidence to the satisfaction of the jury, and if this has not been done the verdict should be for the defendant.

"3. The jury are instructed that there is no evidence in this case from which they could find negligence on the part of the defendant merely because of the kind, construction, or character of the car, or its size, length, or width, or the distance it protruded over the track when going around the curve in question, or in the locality or construction of the tracks or the curve."

"11. If the jury should find that the plaintiff, after crossing the tracks, continued his journey north on the west side of

Thirty-fifth street so near the tracks that a passing car would strike him, then he was guilty of negligence contributing to the accident, and the jury should find for the defendant, unless they further find that as the car approached the plaintiff the motorman discovered him in a dangerous position in time to have avoided the accident by the use of ordinary care.   And if they find that the motorman sounded the gong in time to enable the plaintiff to do so he had the right to assume that he would leave the tracks so that the car would pass in safety, unless the motorman discovered that he would not do so in time to have avoided the accident by the use of reasonable diligence and care.

"12. If the plaintiff knew, or by the use of ordinary care would have known, that the car projected out over the rail more in passing around said curve than it did on a straight track, it was his duty in passing the curve to be more cautious there than elsewhere to keep a safe distance from it.

"13. If the jury find for the plaintiff they should allow him only such damages as will fairly compensate him for the physical suffering, and mental suffering consequent thereon, occasioned by his injuries, his loss of time from his work or business, and the expenses which he necessarily incurred in repairing his wagon, and for medical attention.   And they are further instructed that there is no evidence of permanent injuries, except as to his hearing in one ear, and they shall not allow him anything for that unless they find that he is permanently deaf wholly or partially in his left ear and that it was caused by the accident in question, and the allowance of damages, if any, on this account, should be only in proportion to the degree of deafness, if any."

The court refused to grant the following prayers requested on behalf of the defendant, to the refusal to grant each of which the defendant noted an exception:

"6. The jury are instructed that at the place where the accident happened the defendant had a right of way over that part of streets occupied by its tracks, and a place on each side thereof covered by the car, including that part of the street over which the end of the car passed in rounding the curve, superior to that

of the plaintiff; and if the jury find that after the plaintiff knew or by the use of reasonable caution would have known that the car was approaching, he had a reasonable time to have moved away from the track far enough to have been in a place of safety by the time the car arrived where he was; and if they further find that when the car approached the plaintiff's wagon it was so far from the track that a reasonably prudent man, situated as the motorman then was, might have believed that the car would pass the wagon in safety, and that the said motorman did so believe, then they should find for the defendant."

"7. If the jury find that after the plaintiff crossed the track he continued up 35th street on the west side thereof, so near the track, either below or opposite any part of the curve, as to be struck by the passing car after he had had a reasonable time within which to have reached a place of safety; and if they further find that when the car approached the plaintiff's wagon it was so far from the track that a reasonably prudent man, situated as the motorman then was, might have believed that the car would have passed the wagon in safety, and that the said motorman did so believe, then they should find for the defendant."

"10. It was the duty of the plaintiff to expect and reasonably look for the approach of a car, not only while he was crossing but after he had crossed the track, and while he was near enough to it to be struck by a passing car, and if the jury find that he failed to do so, then he was guilty of negligence, and if they further find that such negligence caused or contributed to cause the accident, and if they shall also find that when the car approached the plaintiff's wagon, it was so far from the track that a reasonably prudent man, situated as the motorman was, might have believed that the car would pass the wagon in safety, and that the said motorman did so believe, then they should find for the defendant."

"14. The jury are instructed that there is no evidence in this case from which they can find that the car of the defendant company was running at a greater rate of speed than the law allows."

The court granted the following substitute for the defendant's sixth, seventh, eighth, and ninth prayers over the objection of the defendant, and exception was reserved:

"The jury is instructed that, at the place where the accident to the plaintiff happened, the defendant had a right of way over the part of the street which was occupied by its track, and the space on each side thereof covered by its car, including that part of the street over which the end of the car passed in rounding the curve, and that such right of way was superior to the right of the plaintiff in using the said parts of the street, in the sense and to the extent, however, only that the plaintiff might not unreasonably obstruct the said parts of the street in their use by the defendant and that in going upon or crossing the said parts of the street it was the duty of the plaintiff only to exercise the care of a reasonably prudent man to see to it that he was not so obstructing the said parts of the street, or exposing himself to danger from the defendant's cars, and, further, upon demand or due warning by the defendant or its servants, to remove from the said parts of the streets with reasonable promptness; but even though the plaintiff may have been unreasonably obstructing the said parts of the street or delaying in his passage upon and over the same, such fact of itself would not excuse the defendant's servant in so negligently operating the defendant's car as to cause a collision of it with the plaintiff's wagon."

The defendant also excepted to the refusal of the court to grant each of the following prayers as requested, and to each of the rulings of the court in granting them as modified. (Modifications are italicized.)

"4. If the jury shall find from the evidence that the plaintiff was guilty of negligence contributing to the accident, they will find for the defendant, although they should find from the evidence that the defendant was also guilty of negligence. *Provided, that although the plaintiff may have negligently put himself in a place of danger, the defendant will yet be liable if the jury shall find further from the evidence that after the plaintiff had so put himself in such place of danger the motorman saw such to be the case and that the plaintiff was not aware of the immediate*

*peril of his position, and the defendant's servant did not then use such means as the evidence may show were within his control to prevent the accident, in that case your verdict should be for the plaintiff.*

Given as modified."

"5. If the jury find from the evidence that the plaintiff after crossing the tracks continued near enough to them to be struck by a passing car, after he had had time to reach a place of safety, *such fact may be taken into consideration by the jury in determining the question of whether the plaintiff was guilty of negligence contributing to the accident, together with all other evidence and circumstances reflecting on that question.*

Given as modified."

The foregoing prayer was requested with the following words in place of those italicized: "this would raise a presumption that he was guilty of negligence contributing to the accident."

"8. It was the duty of the plaintiff to have expected and to have looked for the approach of a car, not only while he was crossing but after he had crossed the track, and his failure to do so was negligence, and if it caused or contributed to cause the accident he cannot recover. *Except in the instance the court has advised you of in def't's prayer number four.*

Given as modified."

"9. If the jury find that after the plaintiff crossed the track he continued up Thirty-fifth street, on the west side thereof, so near the track, either below or opposite any part of the curve as to be struck by the passing car, after he had had a reasonable time within which to reach a place of safety, then the verdict should be for the defendant. *Except as in the instance mentioned in defendant's instruction number four* (4).

"15. The jury are instructed that they cannot find the defendant guilty of any negligence in this case because the motorman of the car failed to sound his gong, if they should find the facts so to be from the evidence, *but such a fact may be considered by the jury in determining the question of negligence.*

And thereupon the court charged the jury as follows:

The COURT: "Gentlemen of the jury: The plaintiff, Edward

A. Blick, brings his action against the Metropolitan Railroad Company, which he avers to be a body corporate, and to be the owner of a certain street railway, the tracks of which are laid down upon and extending along a certain street in the city of Washington known as Thirty-fifth street, northwest, and certain other public streets that are named here in the declaration through which the railway also runs.

"It is not necessary for me to mention all of the streets mentioned in the declaration. You have heard them repeated during the progress of the trial several times, and you will take the declaration with you, from which you can learn on your retirement, if you wish to know, where the line of railway extends outside of the locality where this alleged accident, for which this suit was brought, occurred."

(The court thereupon read the declaration.)

"To this the defendant has pleaded 'Not guilty.'

"The plaintiff having brought his suit, and having made these allegations in his declaration as to the claim which he makes against the defendant of negligence in the running of the car, by reason of which negligence he claims an accident occurred— a collision between his wagon and the car—resulting in great injury and loss to him of his property, and of health, and suffering, as he claims, it becomes necessary for him to assume the burden in the trial of the case of proving, by a preponderance of the evidence, the substantial averments of the declaration. He must prove that the defendant was negligent, by a preponderance of the evidence, and he must satisfy your minds that the defendant was negligent in the respects and in the manner set forth in his declaration. There is one thing of which you shall be satisfied, that the plaintiff has, by a preponderance of all the evidence in the case, established the fact of negligence on the part of the defendant, while he has averred that he was in the exercise of due care. In order to avoid the consequences of the negligence which may be so proven to your satisfaction by a preponderance of the evidence, the defendant must show, also by a preponderance of the evidence, that the plaintiff was also negligent in respect to exercising proper and reasonable care on his

own part for his own safety, and to prevent such accident or injury to himself. The plaintiff is not to be presumed to have been negligent. If the defendant, having been proved to have—negligent, by a preponderance of the evidence, seeks to avoid the consequences of that negligence, it is for him to show that the plaintiff was also negligent, and that his negligence contributed directly to the accident and injury which he received. If the jury, having found the defendant to be guilty of negligence, by a preponderance of the evidence, also find from all the evidence that the plaintiff has been negligent in a respect which contributed to the injury of which he complains, in that case, the defendant should be adjudged by you to be not guilty, and your verdict should be for the defendant; notwithstanding the fact that the defendant may have been shown, in your judgment, by a preponderance of the evidence, to have been itself guilty of negligence.

"If on your investigation on your retirement you shall find from an examination of all the evidence, and from a careful consideration of it, that the plaintiff has failed to establish by a preponderance of the evidence that the defendant was guilty of negligence, you need go no further, but will find your verdict for the defendant. But, as I have already indicated to you, if you shall find on the contrary, by a preponderance of the evidence, that the defendant was guilty of negligence, it will be necessary for you to inquire further, whether the plaintiff was guilty of negligence also; and in making that inquiry, you will consider all the evidence in the case. If you find that the plaintiff, as well as the defendant, was guilty of negligence, then your verdict should be for the defendant, because the law will not apportion damages where you find that both parties to a suit of this character are culpable and guilty of negligence mutually, with respect to the safety of themselves and with respect to the safety of the other party. The law will not undertake to say: 'Part of these damages must be paid by the defendant, and a further part by the plaintiff, because he is also guilty,' but will say that, both parties being culpable, neither shall recover from the other.

"There is, however, a question in this case which requires a word of explanation, perhaps, from the court; and it is a question to which the prayers offered by counsel for the respective parties relate—or one of them at any rate—and that is: That if you shall find that the defendant was guilty of negligence, by a preponderance of the evidence, and shall also be satisfied by a preponderance of the evidence that the plaintiff was not free from negligence, and was, in fact, negligent with regard to his own safety; yet if you shall find from the evidence in the case that the plaintiff was in a condition there of peril, where he was liable to receive an injury, and shall find that he was actually ignorant of that fact, and that before the accident or collision the defendant's servant saw the perilous condition in which the plaintiff was; and if you shall find that it was within the power of the defendant's servant when he discovered the plaintiff's perilous condition to have prevented the accident or injury to the plaintiff, either by giving him a warning or by stopping his car, if that should be necessary, and the defendant's servant failed to do this, your verdict will be for the plaintiff.    In other words, if you find that the plaintiff was in actual peril or apparent peril, and find that the defendant's servant might have, either by a warning or by stopping his car or by other means, have prevented the collision and injury to the plaintiff, notwithstanding that you may believe that the plaintiff was guilty of some negligence in reference to looking out for danger, or in not first assuring himself that he was in a safe position with reference to the tracks of the railroad, and the cars running upon them.

"A number of prayers have been submitted to the court for instruction to the jury, some of which will receive the approval of the court.    So far as they go they may be given to you as the law which is to govern you in your deliberations on retirement, in considering your verdict.

"I may say to you now, for fear that I may forget it later, that every question of fact involved in this trial is for the jury to determine, applying the rules of law in relation to your duty and the manner of execution of your duty, as the court may

direct you.    But so far as the determination of questions of fact is concerned, that is a matter which is strictly within your province.    The court has no right to determine any question of fact, nor to direct you as to how you shall find in reference to any question of fact, except to say to you that the law requires you to determine every question of fact by a preponderance of the evidence as in your judgment may seem proper.

"The first prayer of the plaintiff is as follows, and is given to you as the law:" .

The court then read plaintiff's prayers numbered 1 and 2, saying:

"I would add to prayer number 2, the following:

" 'If you also find that the plaintiff had no knowledge that the car was coming upon or against him until the car actually came in collision with his wagon.' "

The court then read plaintiff's prayers Nos. 3 and 4, as modified.

The court then read defendant's prayers Nos. 2 and 3, and No. 4 and No. 5 and No. 8, as modified, adding:

"That refers to the prayer which I read a moment ago, in which it was stated that if the defendant's servant saw the plaintiff was in a perilous condition, and that the plaintiff was not aware of that fact, and that the defendant's servant failed to use all the means within his control and power to prevent the accident, either by stopping his car or by warning given to the plaintiff to get out of the way, the defendant would be liable for negligence in not stopping his car or taking some steps by which to prevent the accident.    In such a case as that the defendant would be liable."

The court then read defendant's prayers Nos. 9, 11, 12, and 13, and plaintiff's prayer No. 5.

Counsel for defendant:    "If the court please, there are one or two things to which I wish to call attention.    Your honor instructed the jury, correctly as I understand it, that the burden is upon the defendant to prove contributory negligence of the plaintiff; but in that connection I would like your honor to say to the jury that in determining that question they have the right

to consider not only the evidence that was put in by the defendant, but that they have the right to consider the plaintiff's own evidence upon that point."

The COURT: "Did I not say so ?"

Counsel for defendant: "I think not."

Counsel for plaintiff: "Consider it as said."

The COURT: "I meant to be so understood. The instruction of the court is this: That you must be satisfied that the plaintiff is guilty of contributory negligence by the examination and consideration of all the evidence, as well that given by the plaintiff as that given by the defendant."

Counsel for defendant: "There is one other point. I am not certain whether your honor intended to charge the jury in this way or not. You did not use this exact language, but your language created the impression in my mind that your charge was to the effect that if the plaintiff was in actual peril, the defendant would be liable if the motorman ran into him, whether a reasonably prudent man would have done it or not. Whether you intended to be so understood or not, I am not quite certain."

The COURT: "In giving the instruction which I gave as a qualication of number 4 of your prayers, I intended to give it in this way: That if the plaintiff was in actual peril, and was himself in ignorance of that peril, and the defendant's servant discovered that he was in peril in time so that he could, by the exercise of the means within his control, have prevented it, then he would be guilty of negligence, if he did not do it."

Counsel for defendant: "With that qualification I think it is correct."

Counsel for defendant then reserved a separate exception to the granting by the court of each of the prayers granted on behalf of the plaintiff, and a separate exception to the refusal to grant each of those on the part of the defendant which were rejected; and an exception also to the giving of those in the modified form that the court did not reject, but modified; and, also, to such portions of the charge as are in conflict with the prayers that I asked for, but which were rejected.—REPORTER.]

*Mr. Charles C. Cole, Mr. R. B. Behrend,* and *Mr. R. S. Huidekoper* for the appellant:

1. It was error, in the first place, for the court to receive the testimony of appellee's witness on the subject of the speed of the car under consideration; in the second place, to refuse to strike it out after it became apparent, on the witness' cross examination, that he could by no possibility know the speed at which the car was traveling, and, in the third place, to refuse to instruct the jury, as requested by the defendant's prayer, that there was no evidence in the case from which they could find that the car was running at a greater rate of speed than the law allows. *Muster* v. *Rwy. Co.* 61 Wis. 325; *Hoppee* v. *Ry. Co.* 61 Wis. 365; *Tully* v. *Railroad,* 134 Mass. 502.

2. The evidence was insufficient to submit to the jury upon the ground of the defendant's negligence, and it clearly showed the plaintiff to have been guilty of contributory negligence.

The duties of one driving upon the track of a street railway company are greater than when merely driving along a highway where there are no street railway tracks. Though the railroad company has not an exclusive right of way, it has a "paramount" or "superior" right of way which others must respect, and it is their duty to look out for the approach of a car, and turn out so as not to impede the progress of the cars, which are run for the general benefit of the public. Failure to do this is negligence on the part of the driver of a vehicle which will defeat his recovery, unless the motorman was guilty of wanton recklessness, or, after he saw the position of the vehicle, failed to use reasonable care to avoid the collision. *Warner* v. *Railway Co.* 141 Pa. St. 615; *McKelvey* v. *Twenty-third Street Ry.* 26 Supp. 711; *Wilderbrand* v. *Eighth Ave. R. R.* 3 Bosw. 314; *Barker* v. *R. R.* 4 Daly, 274; *Adolph* v. *Central Park, etc. R. R. Co.* 76 N. Y. 530–5; *Hot Springs Street Railway Co.* v. *Johnson,* 3 Am. Neg. R. 323 (Ark. 1897); *C. W. D. R. W. Co.* v. *Brek,* 69 Ill. 388; *Hegan* v. *8th Ave. R. R.* 15 N. Y. 380–2; *Fenton* v. *2d Ave.* 126 N. Y. 627; *Ehriman* v. *E. H. City Passenger Co.* 24 Atl. 596, 17 L. R. A. 448. While the doctrine of

"stop, look, and listen," which is applied to steam railroad cross-ings, has not been applied with full force to one about to cross the tracks of a street railway, yet, by analogy, it is, to a certain ex-tent, applied by the courts. *Ehriman* v. *E. H. City Passenger Co.* 17 L. R. A. 448; *Beerman* v. *Union Ry.* 52 Atl. 1090 (R. I.); *Traction Co.* v. *Lusby,* 12 D. C. App. 295. It was not suffi-cient, as a matter of law, for the plaintiff to look for an ap-proaching car when he was 100 or 150 feet from the place of the accident, but he should still have looked, or used his senses, while driving near the track, and this, from his own testimony, he failed to do. See *Hurdle* v. *Railroad,* 8 D. C. App. 120; *Harten* v. *Railroad,* 18 D. C. App. 260; *Barrett* v. *Railway,* 30 W. L. R. 549; *McGee* v. *Railway Co.* 102 Mich. 107–112; *Wood* v. *Detroit R. R.* 52 Mich. 402, 50 Am. R. 259; *Hurley* v. *West End St. Ry. Co.* 180 Mass. 370; *Thomas* v. *Passenger Rail-way,* 132 Pa. 504; *Warner* v. *Railway Co.* 141 Pa. St. 615; *Robe* v. *3d Ave. R. R.* 31 N. Y. S. 797, 10 Misc. 740. To the same effect are the decisions in *Winter* v. *Railway,* 28 N. Y. Supp. 695; *Wilderbrand* v. *8th Ave. R. R.* 3 Bosw. 314; *Barker* v. *Railroad,* 4 Daly, 274. It being the duty of the plaintiff to use his senses—as laid down by the foregoing list of authorities —to discover the approach of a car, his failure to do so, when there is a car approaching, will render him liable for the conse-quences, the same as though he had used his senses, and had ac-tually seen the car approach. It was held in the cases of *Fitz* v. *Detroit Ry. Co.* 62 N. W. 1007, and in *Winch* v. *3d Ave. Ry.* 33 N. Y. S. R. 615, that where the plaintiff, driving on a car track, in turning to cross the track, because of the delay caused thereby, is struck by a car in the rear, which he had not ob-served, he is guilty of contributory negligence. In the follow-ing cases it was held contributory negligence, as a matter of law, for one to attempt to cross a short distance in front of an ap-proaching car. *Hurdle* v. *Railroad Co.* 8 App. D. C. 120; *Harten* v. *Brightwood Ry.* 18 App. D. C. 260; *Barrett* v. *Co-lumbia Ry.* 30 W. L. R. 549; *Reiss* v. *Met. Ry. Co.* 58 N. Y. Supp. 1024; *Clauncy* v. *Troy L. Ry.* 88 Hun, 496; *Lefowtz* v. *Met. St. Ry.* 56 N. Y. Supp. 215; *Smith* v. *Electric Traction*

*Co.* 187 Pa. 110.   In the last case the plaintiff was held guilty of contributory negligence where he drove in front of a slowly approaching car, thinking the car would be stopped.   See also *Beltan* v. *Baxter,* 54 N. Y. 245–7; *Petri* v. *3d Ave.* 63 N. Y. Supp. 315.

The accident was due wholly to the inattention of the plaintiff, without reasonable excuse therefor, in not keeping far enough away from the track not to be struck by a passing car, when he knew one was liable to pass any moment, and would have heard it had he been listening, even if a gong had not been sounded.   *Winter* v. *Crosstown Street Railway,* 28 N. Y. Supp. 695; *Wilderbrand* v. *Eighth Ave.* 3 Bosw. 314; *Barker* v. *Railroad,* 4 Daly, 274.

The negligence, complained of in the declaration, is not sustained by the evidence.   It is not negligence to fail to sound a gong, as the case of *Barrett* v. *Columbia R. R. Co.* 30 W. L. R. 549, and the line of cases following *Railroad Co.* v. *Houston,* 95 U. S. 702, all hold, and it is not proved by the evidence that the motorman failed to do so.

If the motorman was negligent in running the rear end of his car into the rear wheel of the defendant's wagon, thinking that he had space enough to pass without collision, the plaintiff was equally negligent and equally mistaken, if, in fact, he used his senses at all, in that belief.

It makes no difference whether the wagon was still or moving. The superior right of way of the railroad company at this point made it the duty of the plaintiff to observe how far he was from the track, and to use his judgment in keeping far enough from it not to be hit.   If the plaintiff was justified in taking this risk, and assuming that he was in a safe position, the motorman was equally justified in that assumption.   The defendant company can not be held liable, as a matter of law, where there is mutual mistake of the plaintiff and the defendant's servants.   *Spaulding* v. *Jarvis,* 32 Hun, 621; *McKelvey* v. *Twenty-third St. Ry.* 26 N. Y. Supp. 711; *Patton* v. *Phila. Traction Co.* 132 Pa. St. 76; *Atlantic Coast El. Ry.* v. *Rennard,* 6 Am. Neg. R. 125–8; *West Chicago St. Ry.* v. *Boeker,* 3 Am. Neg. R. 532.

In the following cases it has been held negligence, as a matter of law, on the part of the plaintiff, where he was struck by the side of a car, and injured; though these cases are not where a car was rounding the curve, yet the principle is the same, for the plaintiff himself testified that he knew the cars swung out in rounding the curve, and he should have been held to a greater degree of care on account of that knowledge, commensurate with the increased danger.  *Suydam* v. *Railroad Co.* 41 Barb. 375; *McQuade* v. *Met. St. Ry.* 39 N. Y. Supp. 335; *Widmer* v. *West End St. Ry. Co.* (Mass.) 32 N. E. 899; *Goordow* v. *Louisville El. Ry.* 44 S. W. 972; *Nein* v. *La Crosse City Ry.* 92 Fed. 85; *South Chicago City Ry.* v. *Kinnare,* 96 Ill. App. 21.

3. It was error to give the plaintiff's prayer numbered two, and to modify defendant's prayers four and five.  *R. & D. R. R.* v. *Didzonut,* 1 App. D. C. 482; *Cullen* v. *B. & O. R. R.* 8 App. D. C. 69.

4. The court erred in refusing to grant the prayer requested by the defendant marked six (6).  The first part of the prayer is directly in line with the following decisions:  *Adolph* v. *Central Park R. R.* 76 N. Y. 530–5; *Hot Springs Ry. Co.* v. *Johnson* (Ark.) 3 Am. Neg. R. 323; *Hegan* v. *8th Ave. R. R.* 15 N. Y. 380; *Warner* v. *Ry. Co.* 141 Pa. St. 615; *McKelvey* v. *23d St. Ry.* 26 N. Y. Supp. 711; *Ehriman* v. *E. H. C. P. Co.* 17 L. R. A. 448.  The second part of the prayer is in accord with the following decisions:  *Barrett* v. *Columbia Railroad,* 30 W. L. R. 549; *Harten* v. *R. R. Co.* 18 App. D. C. 260; *Hurdle* v. *R. R.* 8 App. D. C. 120; *C. W. D. R. W. Co.* v. *Bret,* 69 Ill. 388; *McGee* v. *Railway Co.* 102 Mich. 107–115; *Wood* v. *Detroit Railroad,* 52 Mich. 402; *Carson* v. *F. L. P. & R. Co.* 146 Pa. St. 219; *Hurley* v. *West End Railway Co.* 180 Mass. 370; *Thomas* v. *Passenger Railway,* 132 Pa. St. 504; *Warner* v. *Ry. Co.* 141 Pa. St. 615; *Bennett* v. *Detroit, etc., Railway,* 7 Am. Neg. R. 633.  The third part of the prayer is in accord with the following decisions:  *Winter* v. *Railway,* 28 N. Y. Supp. 695; *Spalding* v. *Jarvis,* 32 Hun, 621; *McKelvey* v. *23d St.* 26 N. Y. Supp. 711; *Patton* v. *Phila. Traction Co.* 132 Pa. St. 76; *Atlantic Coast El. Railway* v. *Rennard,* 6 Am. Neg. R. 125;

*West Chicago St. Railway* v. *Boeker,* 3 Am. Neg. R. 532; *Wilderbrand* v. *8th Ave.* 3 Bosw. 314; *Barker* v. *R. R.* 4 Daly, 274.

5. The action of the trial court in refusing to grant the fourth prayer of the defendant, and granting it as modified, taken with the refusal to grant the defendant's prayers marked six and seven, was, in effect, instructing the jury that the railroad company was an insurer of the safety of travelers along its tracks. *Pendleton St. R. R.* v. *Stallman,* 22 Ohio St. 1–22; *Wright* v. *3d Ave. R. R.* 5 N. Y. Supp. 707; *Moroney* v. *Brooklyn City Ry.* 30 N. Y. St. 911; *North Chicago Electric Ry. Co.* v. *Penser,* 190 Ill. 67.

*Mr. Henry E. Davis* and *Mr. Charles Cowles Tucker* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The appellant's first exception and first assignment of error are addressed to the ruling of the trial court with reference to the testimony of one of the witnesses for the plaintiff, who stated that he judged that the car was running about 13 or 14 miles an hour. This statement, which may be said to have been extorted by counsel for the plaintiff from the witness, who professed his inability to testify with accuracy, was admitted in the first instance without exception reserved to its admission by the defendant. But afterwards, when it became apparent, as it was assumed, that the witness had not taken sufficient notice of the car to be able to testify correctly to its speed, counsel for the defendant moved to exclude the testimony. This the trial court refused to do, and remarked that it was proper to go to the jury for what it was worth. To this ruling exception was reserved on behalf of the defendant.

The ruling was entirely correct. Any man of average intelligence who sees a moving car or a moving vehicle of any kind is competent in law to form and express an opinion as to its speed; and the opinion is competent evidence in a case like the present. But the value of the evidence is for the jury. It may

be practically worthless for the want of the attention on the part of the witness sufficient to give it value; but of its sufficiency in law to go to the jury for what it may be worth there can be no reasonable question.　It is not deemed necessary to cite authority in support of so plain a proposition.

2. More important, however, and more demanding our serious consideration is the proposition of the appellant that a verdict should have been directed in favor of the defendant, on the ground that there was no sufficient testimony to establish negligence on the part of the defendant, and because the plaintiff was guilty of contributory negligence.　But we think that the trial court was clearly right in its ruling in this regard.

Plainly there was no proof of contributory negligence on the part of the plaintiff such as would justify a peremptory verdict against him.　At the most only a question of fact was raised for the jury.　He was passing up along the side of the defendant's track.　The defendant's car had almost passed him in safety. There was ample room for both car and wagon to proceed onwards in safety, had it not been for the curve which the car was here required to make.　There might have been mistake, or miscalculation, or inattention on the part of the plaintiff; but certainly there was no such clear case of negligence as that all sensible men could take but one view of it.　We think it would have been error to take the case from the jury upon any such ground as this.

Nor was there such failure of proof that the defendant was negligent as would justify the withdrawal of the case from the jury.　Both the plaintiff and the defendant were entitled to be on the street.　The defendant had a superior right of way so far as to require that the plaintiff should put no obstacle in its way; but it had no exclusive right.　If the plaintiff was too dangerously near the track, the motorman of the car must have been aware of the fact.　There was testimony that he was propelling his car at very great speed; the injury to the wagon and the distance which it was thrown is ample proof of this, apart from the testimony of any witness as to the rate of speed.　In fact, it would seem that considerable speed was necessary in or-

der to surmount the elevation and go round the curve.  Then
the motorman knew, or should have known, that the rear end of
his car projected several feet beyond the track in going round
the curve, and that therefore there was danger from it to passing
vehicles.  Intelligent men might well be divided in opinion as
to the duty of the motorman in the premises; and if this be ad-
mitted, as we think it must be, it is plain that a case arises for
the jury, and not for the court.  It was proper, therefore, for
the trial court to decline to take the case from the jury, or per-
emptorily to direct a verdict for the defendant.

3.  If there was here a case for the jury, as we think there
was, we think also that the instructions were proper under which
it was submitted to the jury.  We do not deem it necessary to
consider these instructions in detail.  They do not announce
any new rule of law.  They are all well founded in reason, and
well supported by authority; and, together with the charge of
the court, they fully and fairly cover the whole case and state
the law with substantial accuracy.  In fact, this is not seriously
controverted by the appellant.  The argument on behalf of the
appellant, in this connection, is that the instructions given by
the court had the result to negative one that was asked by the
defendant and refused, to the effect "that, if the wagon was far
enough from the track so that a reasonably prudent man might
have formed the honest belief that the rear of the car would pass
it, and the motorman actually believed this, then the defendant
was not liable, because there was no negligence on the part of the
motorman."  But the plain answer to this argument is,—first,
that the record fails to show any such instruction, dissociated
from objectionable elements, as having been requested and re-
fused; secondly, because the instruction is inconsistent in itself,
since, if a car projects 4 feet from a track, it must necessarily
strike anything within such 4 feet, and no prudent or reasonable
man could think differently; and, thirdly, because this precise
point had been fully and satisfactorily covered by the first in-
struction given by the court at the request of the plaintiff, and it
was not necessary to duplicate it in other words.  This first in-
struction told the jury that the motorman was not obliged to use

greater care than a reasonably prudent man should, in the situation, have used in operating around this curve a car of the kind that was used.

On the whole, we find no error in the record that in our opinion would justify a reversal.

We think that the judgment appealed from should be affirmed, with costs.   And it is so ordered.                    *Affirmed.*